## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM ROCK, | : | CIVIL NO: 1:11-CV-01839 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| DONNA ASURE, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

The plaintiff, William Rock ("Rock"), a state prisoner currently detained at SCI Houtzdale, brings this civil rights action under 42 U.S.C. § 1983. The matter is presently proceeding *via* a second amended complaint.  In his second amended complaint, Rock raises several constitutional claims under the Eighth Amendment deliberate indifference standard, in connection with a thumb injury he incurred while detained, post-sentencing, at the Monroe County Correctional Facility ("MCCF").  Pending before me are two motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the following reasons, I recommend that the motions be granted.

## I.   Procedural History.

On October 5, 2011, Rock initiated this civil rights action by filing a complaint along with a motion to proceed *in forma pauperis*. *Docs.* 1 & 3.  In the complaint, Rock named the following nine defendants: (1) Donna Asure ("Asure"),

the Warden at MCCF; (2) Garry McFarland ("McFarland"), the Deputy Warden at MCCF; (3) Susan McCool ("McCool"), a Monroe County Commissioner; (4) Janet Weidensaul ("Weidensaul"), a Monroe County Commissioner; (5) John Doe Medical Company; (6) Dr. Jane Doe; (7) Nurse Jane Doe; (8) Linda Kelly ("Kelly"), the former Pennsylvania Attorney General; and (9) MCCF. *Doc.* 1 at 2. On October 13, 2011, Magistrate Judge Smyser conducted a screening analysis pursuant to 28 U.S.C. § 1915A and dismissed Rock's complaint without prejudice. *Doc.* 6. Judge Smyser further granted Rock leave to amend and leave to proceed *in forma pauperis*. *Id.*

On November 14, 2011, Rock filed his first amended complaint. *Doc.* 8. In the first amended complaint, Rock only named Asure, Dr. Jane Doe, and Nurse Jane Doe. *Id.* Thereafter, on November 17, 2011, Judge Smyser ordered that the amended complaint be served on the defendants; though, service could not be executed against the two Jane Does. *Docs.* 9, 11, & 12.

On December 1, 2011, Asure filed a motion to dismiss Rock's amended complaint. *Doc.* 16. Before the Court could issue a ruling on the merits, Rock filed a motion to amend the first amended complaint. *Doc.* 29. In his motion, Rock informed the Court that he had identified the two Jane Doe defendants. *Id.* at ¶ 2. Rock, however, failed to file a brief in support, and Judge Smyser deemed the motion withdrawn. *Doc.* 30. Nevertheless, Judge Smyser permitted Dr. Jane Doe

to be substituted with Dr. Deborah Wilson ("Wilson") and Nurse Jane Doe to be substituted for Grace Ramos-Huertas ("Huertas"). *Id.* As well, the Court later adopted Judge Smyser's Report and Recommendation wherein Asure's motion to dismiss was denied. *Docs.* 32 & 37.

After the Court denied Asure's motion to dismiss, Rock filed three motions to amend his first amended complaint. *Docs.* 46, 61, & 92. Rock's first motion to amend was dismissed for procedural reasons, *see Doc.* 58, and Chief Magistrate Judge Carlson determined that Rock's proposed second amended complaint failed to state a claim upon which relief could be granted, *see Doc.* 83. However, on December 17, 2012, I granted Rock's third motion to amend. *Doc.* 107.

On December 17, 2012, Rock filed his second amended complaint. *Doc.* 108. In his second amended complaint, Rock names the following 14 defendants: (1) Asure, (2) Wilson, (3) Huertas, (4) Paul James ("James"), (5) Dee Reiss ("Reiss"), medical staff at MCCF, (6) McFarland, (7) Richard Cuth ("Cuth"), grievance coordinator at MCCF, (8) McCool, (9) Theresa Merli ("Merli"), former Monroe County Commissioner and member of the MCCF Prison Board, (10) Todd Martin ("Martin"), the Monroe County Sherriff and member of the MCCF Prison Board, (11) David Christine ("Christine"), the Monroe County District Attorney and member of the MCCF Prison Board, (12) Marlo Merhige ("Merhige"), the Monroe County Controller and member of the MCCF Prison Board, (13) MCCF

Prison Board, and (14) Monroe County.  *Doc.* 108 at 2.  The thrust of Rock's second amended complaint is that the defendants acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.  *See generally,* *Doc.* 108.  As such, Rock seeks compensatory and punitive damages.

After Rock filed his second amended complaint, I screened it in accordance with 28 U.S.C. § 1915A.  *Doc.* 109.  I ultimately concluded that Rock failed to state a claim against McCool, Merli, Martin, Christine, and Mehrige – all members of the MCCF Prison Board, because Rock did not allege facts from which it could be reasonably inferred that their policies created an unreasonable risk of an Eighth Amendment violation, or, even if their policies did create such a risk, that they were aware of and indifferent to any risk.  *Id.* at 8-9.  As such, I recommended that those defendants be dismissed from the case.  *Id.*  On January 16, 2013, the Court adopted my recommendation.  *Doc.* 137.

Subsequently, James, Huertas, Reiss, and Wilson filed a motion for summary judgment, a statement of facts, and corresponding brief in support.[1] *Docs.* 138, 139, & 140.  Following an extension of time, Rock filed a brief in opposition (*Doc.* 149 & 149-1 at 1-4), two affidavits (*Doc.* 149-1 at 4-20; *Docs.* 149-1 at 21-25 & 149-2 at 1-17), and several exhibits (*Docs.* 149-2 at 19-25 &

---

[1]     Hereinafter, these defendants will be collectively referred to as the Medical Defendants.

149-3 at 1-16).  The Medical Defendants did not file a reply brief and the time for doing so has since expired.  Accordingly, the Medical Defendants' summary judgment motion is ripe for disposition on the merits.

Similarly, on May 17, 2013, Asure, Cuth, and McFarland filed a summary judgment motion, a statement of facts, and corresponding brief in support.[2]  *Docs.* 162, 163, & 164.  On June 13, 2013, Rock filed a brief in opposition and an answer to the Non-Medical Defendants' statement of facts.  *Docs.* 167, 168, & 169.  The Non-Medical Defendants did not file a reply brief, and their time for doing so has since lapsed.  Accordingly, this motion is also ripe for disposition on the merits.[3]

---

[2]  Hereinafter, these defendants will be collectively referred to as the Non-Medical Defendants.

[3]  After the Medical Defendants filed their motion for summary judgment, but before the discovery deadline expired (*see Doc.* 122), Rock filed two motions to amend his second amended complaint.  *Docs.* 141 & 153.  By operation of his second motion to amend, the first (*Doc.* 141) should be denied as moot.  In the remaining motion to amend, Rock properly filed all of the required documents, but his motion (*Doc.* 153) should nevertheless be denied.  Not only would the late filing of this third amended complaint be prejudicial to the defendants, but Rock continues to fail to state a claim against the MCCF Prison Board defendants and Rock's claim against Wendy Johnson, an LPN at MCCF, fails as a matter of law based on the discussion of his case herein.

## II.    <u>Factual Statement.</u>[4]

On September 29, 2009, Rock was sentenced in Pennsylvania state court to serve 5.5 to 12 years in state prison.  After he was sentenced, Rock was placed in custody at MCCF pending transfer to a state correctional facility.  *See Doc.* 163-7 at 5-6.  On Sunday, October 11, 2009, while Rock was naked and cleaning himself, he fell inside of his cell at MCCF and injured his thumb on the toilet.  *Doc.* 149-1 at 22, ¶ 6; *see Doc.* 163-1 at 1. Subsequently, Huertas came to examine Rock and noted abnormal joint movement in the left thumb.  *Id.* at 2.  Based on her notes, Huertas was ordered to send Rock to the Pocono Medical Center in order to rule out a possible bone fracture.  *Id.*

At approximately 9:26 p.m., on that same evening, Rock was taken to the Pocono Medical Center, where he was seen by Dr. Robert Liegner ("Liegner").  *Doc.* 139-1 at 2; *see Doc.* 163-1 at 3-4. According to Rock's medical records, Liegner assessed Rock with Gamekeeper's Thumb and diagnosed him with a rupture of the left thumb ulnar collateral ligament.  *Doc.* 139-1 at 2.  Consequently, Liegner prescribed Tylenol with Codeine #3 ("Tylenol #3").  *Id.* at 5, 7.  Rock was to take 1-2 Tylenol #3 tablets every four hours as needed.  *Id.*  Liegner also recommended that Rock consult with a hand specialist "later [that] week."  *Id.* at 7.

---

[4]    In accordance with the standard of review on a motion for summary judgment, the facts should be read in the light most favorable to Rock, the nonmoving party.  *See, infra*, Part III.

Liegner also provided Rock with the names of two specialists that he (Rock) might contact for consultation.  *See id.*

After he met with Liegner at Pocono Medical Center, Rock was returned to MCCF around 10:17 p.m.  Upon Rock's return to MCCF, he informed Huertas and Wilson that he was in pain and that he needed to see a specialist "within 5 days."[5] *Doc.* 149-1 at 23, ¶¶ 10-11.  Rock, however, did not see a specialist within Liegner's recommended time frame.  Nevertheless, Reiss' notes from October 23, 2009, reflect that Rock was scheduled to meet with a specialist at Lehigh Valley Orthopedics on November 4, 2009.  *Doc.* 139-2 at 7.  Moreover, according to Wilson, on October 12, 2009, she ordered that a consult with a specialist be scheduled for Rock.  *Doc.* 139-10 at 4.  Wilson further testified that she has no control over specialists' schedules, and Rock has not provided any evidence supporting the proposition that a specialist could have seen him within the same week that he injured his thumb.

On October 29, 2009, due to an undisclosed emergency at MCCF, Rock's appointment to see a specialist was rescheduled to November 11, 2009.  *Doc.* 139 at ¶ 42.  In addition to not knowing details about the emergency or who actually cancelled Rock's appointment, it remains unclear why his consultation needed to

---

[5] Rather than informing MCCF staff that he was required to see a specialist within the same week that he met with Liegner, Rock informed the staff that he was required to see a specialist "within 5 days," apparently in reference to the work week. *See, e.g.*, *Doc.* 149-1 at 23, ¶ 10.

be cancelled since it was not scheduled to take place for another six days.

Subsequently, on November 2, 2009, Rock filed a grievance complaining that he had not yet seen a specialist. *Doc.* 163-4. Rock's grievance was received on November 5, 2009, and it was marked "denied" because Rock's consultation had already been rescheduled. *See id.* McFarland was responsible for answering the grievance after Cuth investigated it by calling the medical department at MCCF. *Doc.* 163-8 at 2. As well, on the day after Rock's grievance was received, he was transferred to SCI Graterford. As a result, Asure never saw the grievance, because it was impossible for Rock to have completed the final step in the appeal process. *See Doc.* 163 at ¶ 52; *see also Docs.* 163-5 & 163-7 at 1-2. Also, Rock's rescheduled appointment was ultimately cancelled because he was transferred to SCI Graterford. *Doc.* 139 at 43; *see Doc.* 139-6 at 18. Rock has not adduced any evidence that Asure or any defendant at MCCF had the authority to delay or postpone his transfer to state custody, much less that any of the non-medical defendants were aware of Rock's medical condition prior to the filing of his grievance.

Prior to his transfer to SCI Graterford, Rock received only 1 Tylenol # 3 tablets four times per day, contrary to Liegner's original prescription. *Doc.* 149-1 at 23, ¶ 14. According to Wilson, however, a new prescription was written for Rock upon his return to MCCF, from the Pocono Medical Center, so that Rock

could receive his medications within the prison's pill-dispense schedule. *Doc.* 139-10 at 3. In addition, Wilson testified that because Tylenol #3 is considered a controlled substance, the prison does not permit a prescription of "1 to 2" tablets per day. *Id.* Wilson clarified that the reason behind the policy is to prevent controlled substances from being left over inside of the prison in instances where the prisoner requires only one tablet. *See id.* Pursuant to the new prescription, therefore, Rock was scheduled to receive only 1 tablet four times per day, as needed, for five days. *Id.* If the dosage did not work, Wilson would have raised the dosage to two tablets. *Id.* Further, the prescription was written only to cover the expected time period between the time of prescription and Rock's appointment with the outside provider. *Id.* at 3-4. Nonetheless, Rock was also prescribed Naproxen to help reduce swelling and inflammation. *Id.* Rock was prescribed the Naproxen from October 12 to 19, 2009, and again from October 24 to November 23, 2009. *Doc.* 139-2 at 18-19.

Upon Rock's arrival to SCI Graterford on November 6, 2009, he underwent a medical intake screening. *Doc.* 139-6 at 18-21. At the intake screening, it was noted that Rock had "ripped" tendons in his left hand, he was taking Naproxen, and his thumb was already in a splint. *Id.* at 17. Despite being aware of Rock's thumb injury, SCI Graterford did not immediately make an appointment for Rock to see a specialist. *See Doc.* 139 at ¶ 48. According to Rock, this occurred, in part,

9

because James intentionally failed to include information about Rock's thumb injury on the Transfer Health Information form.  *Doc.* 169 at 5; *See Doc.* 163-6 at 22.  Rock, though, does not provide any competent evidence to adequately support this claim about James.

On December 18, 2009, while in state custody, another x-ray was taken of Rock's left hand.  *Doc.* 163-6 at 61.  On that same date, the DOC also noted that Rock had a ripped tendon in his left hand.  *Id.* at 80.  Two months later, Rock met with Dr. Barry Beaven, the Medical Director at SCI Somerset, who noted that Rock was referred to a hand specialist.[6]  *Id.* at 81.  On February 28 and March 3, 2010, Rock was medically cleared for a transfer to SCI Houtzdale in order for him to consult a hand specialist.  *See id.*; *see also Doc.* 169 at ¶ 64.  Based on his medical records, though, Rock was not seen again, about his injury, until June 3, 2010.  *See Doc.* 163-6 at 32.  On that date, Rock met with Dr. Rochelle Rosen, who noted Rock's history of Gamekeeper's Thumb.  According to Dr. Rosen's notes, Rock had also met with a doctor at SCI Somerset, who recommended a hand specialist.  *Id.*  Consequently, on July 15, 2010, Rock met with Dr. Thomas Hughes at the Allegheny General Hospital.  *Id.*  Dr. Hughes scheduled Rock to have hand surgery on August 9, 2010, to reconstruct the ripped ligament. *Id.*; *see*

---

[6]    Although not necessarily relevant to the case, I note that the record is unclear whether Rock was subsequently transferred from SCI Graterford to SCI Somerset, or whether Dr. Beaven met with Rock at SCI Graterford.

*Doc.* 169 at 14.

Based on Dr. Hughes' notes, apparently taken during Rock's hand surgery, Rock's left thumb ulnar collateral ligament was not repairable.  *Doc.* 169 at 14.  As a result, a Palmaris tendon graft had to be harvested.  *Id.*  Rock fails to include competent evidence, however, demonstrating that the ligament could have been repaired if his consultation, and ultimate surgery, had not been delayed.

## III.   **Jurisdiction and Legal Standard**.

First, given Rock's constitutional claims brought pursuant to 42 U.S.C. § 1983, I find that this Court maintains subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Moreover, the defendants never challenged the Court's personal jurisdiction, and since it is a defense than can be waived, *See* Fed.R.Civ.P. 12(h)(1), I decline to address that issue herein.

With respect to the applicable legal standard, Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The purpose of summary judgment is to avoid unnecessary trials in cases where the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  Thus, the rule

11

functions to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 , 587 (1986)(quoting Fed.R.Civ.P. 56(e) advisory committee's notes on 1963 amendments).

Procedurally, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). If the moving party meets its burden with a properly supported motion, the burden then shifts to the nonmoving party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the nonmoving party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the nonmovant's claim. *See, e.g.*, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)("[W]here the nonmoving party will bear the burden of proof at

trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322-23.

A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49 (1986).  With respect to the sufficiency of the evidence that the non-moving party carrying the burden of proof must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Id.* at 249–50.  Accordingly, there must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita*, 475 U.S. at 586.  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999).  But, again, in determining whether a factual dispute is genuine, the Court must focus on which party bears the burden of proof at trial on the factual issue in dispute, because that party must produce

sufficient evidence to support the factual claim.   Moreover, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV.   <u>Discussion</u>.

Rock raises variations of an Eighth Amendment claim for inadequate medical care under 42 U.S.C. § 1983 against the Medical and Non-Medical Defendants.   In order to survive a motion for summary judgment on a § 1983 claim, Rock must show that the defendants acted under color of state law, and that he was deprived of a federal constitutional right. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). It is well-established that civil rights claims cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, *via* the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.   *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).   Here, neither the Medical Defendants nor the Non-Medical Defendants contend that Rock has failed to show that they were acting under color of state law or that they lacked personal involvement.   As such, the crux of their summary judgment motions turns on whether Rock has raised a genuine issue of material fact demonstrating that a constitutional violation occurred under the Eighth

Amendment.

## A. The Medical Defendants' Motion.

As mentioned, Rock's various Eighth Amendment medical care claims against the Medical Defendants are raised pursuant to 42 U.S.C. § 1983. Those claims are as follows: (1) Wilson, Huertas, and Reiss acted with deliberate indifference to his serious medical needs by failing to promptly schedule a specialist appointment; (2) Wilson acted with deliberate indifference by ignoring his pain management needs; and (3) James was deliberately indifferent to his serious medical needs by failing to note that Rock needed an emergent specialist consult for his thumb. These claims will be addressed *seriatim*.

## 1. Eighth Amendment Deliberate Indifference.

Pursuant to the Eighth Amendment, prison officials are required "to provide basic medical treatment to those whom it has incarcerated."[7] *Rouse v. Plantier*, 182 F.3d 192,197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, (1976)). To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.

---

[7]      The Eighth Amendment expressly provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII.

1993). There are two components to this standard.  Initially, a plaintiff must make

an "objective" showing that the deprivation was "sufficiently serious," or that the

result of the defendant's denial was sufficiently serious. Additionally, the plaintiff

must make a "subjective" showing that the defendant acted with "a sufficiently

culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also*

*Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

This test "affords considerable latitude to prison medical authorities in the

diagnosis and treatment of the medical problems of inmate patients. Courts will

'disavow any attempt to second guess the propriety or adequacy of a particular

course of treatment ... which remains a question of sound professional judgment."

*Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates*

*of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting

*Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

The Supreme Court has established that the proper analysis for deliberate

indifference is whether a prison official "acted or failed to act despite his

knowledge of a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S.

825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  A complaint that a physician

or a medical department "has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth

Amendment [as] medical malpractice does not become a constitutional violation

merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F.Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Further, if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  *See Durmer*, 991 F.2d at 69.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  *See id*; *Ordonez v. Yost*, 289 F. App'x 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons").

Here, the Medical Defendants do not dispute that Rock had a serious medical need.  The parties, instead, focus their arguments on (1) whether the Medical Defendants acted with deliberate indifference, and (2) whether the alleged deliberate indifference caused Rock to undergo surgery that would have otherwise been unnecessary.  Given that I find that no reasonable juror could render a verdict in Rock's favor on the deliberate indifference element, I dispense with a discussion

on the parties' causation arguments.[8]

### a. Claim against Wilson, Huertas, and Reiss.

Rock alleges that Wilson, Huertas, and Reiss were not only aware of his serious medical needs, but they intentionally disregarded Liegner's recommendation that he consult with a hand specialist within the same week that he injured his hand.  As such, Rock's complaint against these defendants concerns the delay in treatment rather than the quality of treatment he received.

The defendants, while not disputing that they were aware of Rock's serious medical needs, argue that Rock's claim must nevertheless fail because the day after Rock injured himself, Wilson ordered that a consult with a specialist be scheduled for Rock.  As well, based on Reiss' notes, the defendants contend that Rock's consultation visit had been scheduled at some point prior to October 23, 2009.  The defendants further contend that Rock's appointment was subject to the specialist's schedule, which the defendants had no control over, and they had no choice but to

---

[8]     I note, however, that Rock failed to provide expert testimony demonstrating that his injury worsened based on the delay, resulting in a seemingly complex hand surgery. Given that it is unclear whether the delay caused Rock to undergo an unnecessary surgical procedure, this was likely a situation where Rock was required to provide expert testimony.  *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)("In some situations in which the seriousness of injury or illness would be apparent to a lay person, expert testimony would not be required."); *see also Miszler v. Shoemaker*, No. 3:04-CV-1756, 2009 WL 790139, at *6 (M.D. Pa. Mar. 20, 2009)(internal quotations and citation omitted)(Vanaskie, J.)("Competent proof of causation in a § 1983 action that arises from alleged deliberate indifference involving a sophisticated medical condition requires expert testimony be offered to prove causation.").

cancel Rock's rescheduled appointment once he was turned over to state custody.

In opposing the defendants' summary judgment motion, Rock argues that although the defendants might not have had control over the schedule of the specialist they contacted, the defendants could have contacted other specialists to find out if he could be seen sooner.  Moreover, Rock suggests that the defendants could have simply taken him back to the emergency room as alternatively recommended in his hospital discharge papers.

Based on the undisputed material facts, I find that no reasonable juror could render a verdict in Rock's favor.  This is simply not a case where the defendants egregiously disregarded another doctor's treatment plan or altogether failed to refer Rock to a hand specialist in light of his serious medical needs resulting in a treatment delay.  Instead, the evidence demonstrates that these defendants scheduled Rock to see a hand specialist as soon as practicable, but the earliest available appointment was not until a month after Rock injured his thumb.

Nevertheless, Rock cites to *Johnson v. Bowers*, 884 F.2d 1053 (8th Cir. 1989) for the proposition that these defendants cannot pass responsibility to the specialist for the delay in his consultation appointment.  While Rock's understanding of *Johnson* is accurate, that case can be factually distinguished.

In *Johnson*, the prisoner-plaintiff brought a similar Eighth Amendment claim pursuant to 42 U.S.C. § 1983.  There, Johnson suffered a stab wound to his

left forearm while imprisoned.  A month after Johnson suffered his injury, the prison's staff physician recommended Johnson to a plastic surgeon.  Johnson, however, was released on parole before significant treatment occurred.  The following year Johnson returned to the same prison on a new sentence.  Almost two years later, Johnson finally met with the surgeon to whom he was originally recommended to see.  After meeting with Johnson, the surgeon coded his injury as non-urgent and placed him on a waiting list to undergo a surgical procedure.  884 F.2d at 1054-55.  As of the date of his federal appeal, Johnson had not undergone the surgical procedure.  *Id.*  Thus, based primarily on the nine-year delay since the original recommendation of surgery, the Eight Circuit determined that the evidence suggested that the prison exhibited deliberate indifference to Johnson's medical needs.  *Id.* at 1056.  In so ruling, the court held, "[t]he responsibility for securing medical care for prisoner's needs rests with the prison authorities, not with some outside medical facility."  *Id.* at 1056-57.

Here, in contrast, the delay between Liegner's original recommendation and Rock's appointments scheduled by the MCCF Medical Defendants was minimal.  *Cf. Hathaway v. Coughlin*, 37 F.3d 63, 64–69 (2d Cir. 1994)(upholding a jury verdict on Eighth Amendment claim in favor of plaintiff where defendants delayed plaintiff's elective hip surgery for two years).  Moreover, the near eight month delay between the time that Liegner made his recommendation and Rock actually

consulted with a specialist cannot be fully contributed to the defendants at MCCF, because Rock left their custody nearly four weeks after his injury first occurred.

In a similar vein, Rock has not adduced any evidence to show that his transfer to SCI Graterford could have been prevented by the Medical Defendants. Rock has likewise failed to present competent evidence demonstrating that his originally scheduled appointment could have proceeded as planned despite the emergency at MCCF or that his appointment was cancelled by the Medical Defendants and not other prison administrators.  Finally, Rock's contention that the defendants should have sent him back to the emergency room is equally unavailing.  For starters, there is no evidence that Rock requested or was required to be sent back to the emergency room.  Instead, the evidence reflects that Rock received a significant level of medical treatment at MCCF, in anticipation for his follow-up consultation, and a specialist was contacted on his behalf.  Moreover, that the Medical Defendants did not contact the specialists referred by Liegner does not amount to a constitutional violation given that Rock is not constitutionally entitled to be treated by any particular medical provider.  *See, e.g.*, *Hamm v. Greer*, 2007 WL 4248490, at *4 (W.D. Pa. Dec. 3, 2007) (holding that prisoner had no right to be treated by a particular medical professional), *aff'd*, 269 F. App'x 149 (3d Cir. 2008); *Rivera v. Brown*, 1986 WL 5704, at *1 (E.D. Pa. May 15, 1986) ("Plaintiff does not have a constitutional right to choose which doctor would treat

21

him.") (Bechtle, J.); *Gahagan v. Pennsylvania Bd. of Prob. and Parole*, 444 F.Supp. 1326, 1330 (E.D. Pa. 1978) (dismissing inmate's claim that his constitutional rights were violated by the denial of the opportunity to consult a doctor of his choice at his own expense). Judgment on this portion of Rock's claim, therefore, should be entered in favor of Wilson, Huertas, and Reiss.

### b.  Claim against Wilson.

Rock claims that Wilson was deliberately indifferent to his pain management needs by disregarding Liegner's prescription for Tylenol #3, failing to meet with him to determine whether the prescribed dosage of Tylenol #3 should have been increased, and failing to extend the Tylenol #3 prescription when Rock had not yet consulted a specialist.

Based on the material facts presented, Wilson did not egregiously disregard Liegner's prescription. The original prescription called for 1-2 tablets every four hours as needed. The major difference between Liegner's original prescription and the amended prescription was that Rock was to receive a single tablet rather than a discretionary one to two.  The reason behind the change in Rock's prescription was to prevent the occasion for substance abuse inside of the prison.  Moreover, rather than receiving the medication every four hours, Rock was scheduled to receive the medication four times per day so as to coordinate with the prison's pill dispensing schedule. Given the legitimacy of the prison's policy, coupled with Wilson's

professional judgment, no reasonable juror could return a verdict in Rock's favor on this aspect of his claim.

Rock's other complaints about Wilson should likewise fail.  There is simply nothing in the record demonstrating that Rock requested to meet with Wilson again or that Wilson was personally aware that the prescribed dosage of Tylenol #3 was inadequate to abate Rock's pain level.  Furthermore, until he filed a grievance, there is no evidence that Rock complained to anyone at MCCF that he was still in pain when the Tylenol #3 prescription expired.[9]  As well, Rock was treated by the medical staff at MCCF as evidenced by the splint on his hand upon arrival to SCI Graterford and the Naproxen that was prescribed for him to help reduce swelling.

Even if the opposite were true, and Rock did complain to Wilson about his pain level while prescribed Tylenol #3, Rock's claim amounts to nothing more than a mere disagreement with Wilson's medical judgment.  Such a claim is insufficient under *Estelle* for purposes of establishing deliberate indifference to a serious medical need.  "Rather, to prevail on a claim involving choices between alternative courses of treatment a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi v.*

---

[9]     In his grievance, Rock failed to reference that he was in pain.  Nonetheless, I infer that he was still in pain given that he was complaining about how he had not yet consulted a specialist.

*Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing and quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). The same holds true with respect to Wilson's decision to prescribe Naproxen, and not Tylenol #3, assuming she was reasonably aware that Rock was still in severe pain when the prescription expired and that the Naproxen was inadequate to address his level of pain. *Cf. Ortiz v. Reynolds*, No. 2:10-CV-1380, 2013 WL 5773092 (E.D. Ca. Oct. 24, 2013)(denying summary judgment on plaintiff's Eighth Amendment inadequate medical care claim where the plaintiff submitted evidence that his severe pain was relieved only by a specific medication). Accordingly, Wilson's conduct, if anything, amounts to negligence, but certainly not deliberate indifference.

### c.  Claim against James.

Rock claims that James' failure to include information about his hand injury on the Transfer Health Information form, despite including all of his other health information, amounts to an Eighth Amendment violation. More precise, Rock contends that James' conduct caused his consultation with a specialist, and eventual surgery, to be further delayed upon his transfer to state custody. This claim, however, can be easily set aside, because Rock has failed to adduce competent evidence demonstrating that James' conduct was egregious or amounted to anything more than mere negligence. Rather, the evidence Rock relies upon in claiming that James intentionally withheld the relevant information about his hand

24

injury is conclusory and wholly speculative. Consequently, summary judgment should be entered in James' favor.

**B. Non-Medical Defendants' Motion.**

As referenced, Rock also claims that the Non-Medical defendants acted with deliberate indifference to his medical needs while he was under their custody and control. The Non-Medical Defendants argue, however, that Rock's Eighth Amendment claim fails as a matter of law because (1) Cuth and McFarland were unaware of Rock's medical needs until he filed a grievance 22 days after his injury, (2) Asure never had knowledge of Rock's injury given the grievance procedure and established timeline in this case, (3) Rock was under the care of medical experts at MCCF, and (4) there is no evidence that his transfer to SCI Graterford was wanton or malicious.

Since the law is the same, I will not repeat the *Estelle* deliberate indifference standard in full.  In addition, though, in the medical care context, if a prisoner is under the care of medical experts, non-medical prison officials are justified in believing the prisoner is being treated properly and is in capable hands. *Spruill*, 372 F.3d at 236.  "Absent a reason to believe (or actual knowledge) that ... doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference." *Id.* at 236; *Durmer*, 991 F.2d at 67.  Non-medical

personnel cannot be held to be deliberately indifferent merely because they fail to respond to complaints of an inmate already being treated by prison medical staff. *Gusman v. Bureau of Prisons*, 231 F. App'x 179, 181 (3d Cir. 2007). In the absence of some indication that treatment is not occurring or was inappropriate, the non-medical prison official cannot be found deliberately indifferent. *Spruill*, 372 F.3d at 236.  This is true because "[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain [the prison's] division of labor." *Id.*

Here, as the Non-Medical Defendants point out, there is no evidence that these defendants knew or were reasonably aware of Rock's thumb injury until he filed a grievance 22 days after the injury first occurred.  Even so, Rock was under the care of medical experts immediately after his injury.  Furthermore, there is no evidence that the Non-Medical Defendants were reasonably aware that no treatment was occurring or that the treatment was inappropriate. Quite the contrary, the evidence demonstrates that Rock was not only receiving care from medical experts, but the medical experts had also scheduled an appointment for Rock to see a hand specialist, provided him a splint, and provided him with pain medications.

In a similar context, once Rock filed his grievance, the Non-Medical Defendants, specifically Cuth and McFarland, reasonably relied upon the fact that Rock was under the care of medical experts and that Rock was re-scheduled to see

a specialist. Moreover, given the short amount of time between the date that Rock's grievance was denied and the date that he was transferred to SCI Graterford, it was practically impossible for Rock to have completed the grievance procedure so as to put Asure on notice of his injury and underlying complaint. Finally, there is no evidence demonstrating that Rock's transfer to SCI Graterford was either wanton or malicious, much less that the Non-Medical Defendants could have prevented it by interfering with a court order. As well, Rock remained under the care of medical experts at MCCF up until his transfer to SCI Graterford, and there is no evidence that they sought to delay Rock's transfer in order for him to consult a hand specialist. Accordingly, the Non-Medical Defendants' summary judgment motion should be granted.

## V.     <u>Recommendation.</u>

Based on the foregoing, **IT IS RECOMMENDED** that:

(1) The Medical Defendants' motion for summary judgment (*Doc.* 138) be

   **GRANTED**;

(2) Rock's motion for leave to file a third amended complaint (*Doc.* 141) be

   **DENIED** as moot;

(3) Rock's motion for leave to file a third amended complaint (*Doc.* 153) be

   **DENIED**; and

(4) The Non-Medical Defendants' motion for summary judgment (*Doc.* 162)

    be **GRANTED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **6th** day of **March, 2014**.


                                             ***S/ Susan E. Schwab***
                                             Susan E. Schwab
                                             United States Magistrate Judge